T.C. Memo. 2016-209

UNITED STATES TAX COURT

THE MALULANI GROUP, LIMITED AND SUBSIDIARY, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18128-12.                              Filed November 16, 2016.

David Wing Keong Wong, Erika L. Lewis, and Joseph H. Goldcamp III, for
petitioner.

Jonathan Jiro Ono, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, Judge:  Respondent determined deficiencies of $264,171 and

$387,494 with respect to petitioner's 2005 and 2007 Federal income tax,

respectively.  The issue for decision is whether petitioner's gain realized relating

[*2] to its disposition of real property in 2007 is entitled to nonrecognition pursuant to section 1031(a).[1]

FINDINGS OF FACT

The Malulani Group, Limited (Malulani Group), is a Hawaii corporation that had its principal place of business in that State when the petition was filed. During all relevant years its operations consisted of leasing commercial real estate in various States, including Hawaii and Maryland. The Malulani Group filed consolidated 2005 and 2007 corporate income tax returns with its wholly owned subsidiary, MBL Maryland, Inc. (MBL). References to petitioner are to the Malulani Group and MBL.

At all relevant times the Malulani Group owned 69.67% of the common shares of Malulani Investments, Limited (MIL), which owned real estate throughout the United States. Before September 2004 the same individual served as president of MIL and the Malulani Group, and the companies had a common board of directors. In September 2004, after approximately 30% of MIL's common shares were acquired by a hostile shareholder as a result of the bankruptcy of the shares' previous owner, each company established a separate

---

[1]All section references are to the Internal Revenue Code of 1986 as in effect for the years at issue.

[*3] board of directors and a different president. Roger A. Ulveling (a former member of the MIL and Malulani Group board of directors) became president of the Malulani Group at that time. Mr. Ulveling was also the chief executive officer of MBL during all relevant years.

By late 2006 the Malulani Group had made substantial loans to MIL. Decisions concerning the loans were made by a separate committee of Malulani Group board members and officers established for that purpose, referred to as the MIL Note Committee. The MIL Note Committee's role was to assess MIL's financial condition and to determine how much would be lent. The MIL Note Committee was composed of Mr. Ulveling and two other individuals.

On October 26, 2006, MBL received a letter of intent from an unrelated third party offering to purchase commercial real estate that it owned in Upper Marlboro, Maryland (Maryland property). The letter of intent outlined the anticipated terms for a purchase agreement covering the Maryland property. It reserved to MBL the right to effect an exchange of the property under section 1031 and obligated the third-party purchaser to cooperate toward that end. MBL's representative signed the letter of intent on October 31, 2006, and thereafter Malulani Group and MBL began a search for suitable replacement property with the aid of real estate brokers. On January 4, 2007, MBL engaged First American

[*4] Exchange Co. (FAEC) to serve as an intermediary through which the Maryland property could be exchanged and entered into an exchange agreement with FAEC setting forth the terms under which FAEC would serve as an intermediary. MBL thereupon assigned its rights under the letter of intent to FAEC, and on January 10, 2007, MBL transferred the Maryland property to FAEC and FAEC sold the Maryland property to the third party for a price of $4,703,000 with closing costs of $71,725. MBL's basis in the Maryland property was $2,743,235 at the time of transfer.

In order to meet the requirements of section 1031(a)(3), MBL had to identify replacement property on or before February 24, 2007 (i.e., 45 days after the sale of the Maryland property). Between October 31, 2006, and February 23, 2007, brokers presented numerous properties owned by unrelated parties to the Malulani Group and MBL as potential replacement properties, and MBL attempted to negotiate the purchase of an office building and an apartment building for that purpose. However, as of the January 10, 2007, sale of the Maryland property, neither the Malulani Group nor MBL had considered acquiring a replacement property from MIL or any other related party. On February 23, 2007, MBL first identified three potential replacement properties, all belonging to MIL.

[*5]   On July 3, 2007, FAEC purchased certain real property owned by MIL and located in Hawaii (Hawaii property) for $5,520,000 and transferred it to MBL as replacement property for the Maryland property. MIL's basis in the Hawaii property was $2,392,996 at the time of purchase.

Petitioner timely filed a consolidated Form 1120, U.S. Corporation Income Tax Return, for 2007. Therein, petitioner reported a realized gain of $1,888,040 from the sale of the Maryland property but deferred recognition of the gain pursuant to section 1031. Petitioner also reported an unrelated $748,273 net operating loss (NOL), which it carried back to 2005. MIL recognized on its 2007 Form 1120 a $3,127,004 gain from the sale of the Hawaii property, which would have increased its regular income tax liability by $1,094,451. However, MIL had sufficient NOLs to fully offset its regular tax liability relating to the sale. It instead paid $44,774 in alternative minimum tax.[2]

Respondent issued petitioner a statutory notice of deficiency in which he determined that petitioner's $1,888,040 gain realized on the sale of the Maryland property did not qualify for section 1031 deferred recognition, that petitioner could offset a portion of the gain with its $748,273 NOL, and that as a

---

[2]Pursuant to sec. 56(d)(1), MIL was allowed to offset only 90% of the alternative minimum taxable income relating to the sale of the Hawaii property.

**[*6]** consequence petitioner had a $387,494 deficiency for 2007. In addition, respondent disallowed petitioner's NOL carryback to 2005 and as a result determined a $264,171 deficiency for that year. Petitioner filed a timely petition for redetermination.

OPINION

I. Like-Kind Exchanges and the Related Person Limitation of Section 1031(f)

Section 1031(a) allows nonrecognition of gain on the exchange of property held for productive use in a trade or business (or for investment) when the property is exchanged for property of a like kind. The basis of the property acquired in a section 1031 exchange (replacement property) is the same as the basis of the property exchanged (relinquished property), decreased by any money the taxpayer received and increased by any gain the taxpayer recognized. Sec. 1031(d). A nonsimultaneous exchange, where the relinquished property is transferred before the replacement property is acquired, generally may qualify for nonrecognition of gain if the taxpayer identifies the replacement property, and then receives it, within 45 days and 180 days, respectively, of the transfer of the relinquished property. See sec. 1031(a)(3). A taxpayer may use a qualified intermediary to facilitate such a deferred exchange--wherein the intermediary acquires the relinquished property from the taxpayer, sells it, and uses the

**[\*7]** proceeds to acquire replacement property that it transfers to the taxpayer in exchange for the relinquished property--without the intermediary's being treated as the taxpayer's agent or the taxpayer's being treated as in constructive receipt of the sales proceeds from the relinquished property.[3] See sec. 1.1031(k)-1(g)(4)(i), Income Tax Regs. In the case of a transfer of relinquished property involving a qualified intermediary, the taxpayer's transfer of relinquished property to a qualified intermediary and subsequent receipt of like-kind replacement property from the qualified intermediary is treated as an exchange with the qualified intermediary. Id.; see also Ocmulgee Fields, Inc. v. Commissioner, 132 T.C. 105, 111 (2009), aff'd, 613 F.3d 1360 (11th Cir. 2010).

In 1989, in order to prevent certain perceived abuses, Congress enacted section 1031(f) to limit nonrecognition treatment under section 1031(a) in the case of like-kind exchanges between related persons. See Omnibus Budget Reconciliation Act of 1989, Pub. L. No. 101-239, sec. 7601, 103 Stat. at 2370-2371; see also H.R. Rept. No. 101-247, at 1340 (1989), 1989 U.S.C.C.A.N. 1906, 2810 ("Because a like-kind exchange results in the substitution of the basis of the exchanged property for the property received, related parties have engaged in like-

---

[3]A qualified intermediary is a person that meets the requirements of sec. 1.1031(k)-1(g)(4)(iii), Income Tax Regs.

**[*8]** kind exchanges of high basis property for low basis property in anticipation

of the sale of the low basis property in order to reduce or avoid the recognition of

gain on the subsequent sale * * * The committee believes that if a related party

exchange is followed shortly thereafter by a disposition of the property, the related

parties have, in effect, 'cashed out' of the investment, and the original exchange

should not be accorded nonrecognition treatment.").  Section 1031(f)(1) generally

provides that if a taxpayer and a related person[4] exchange like-kind property and

within two years either one disposes of the property received in the exchange, the

nonrecognition provisions of section 1031(a) do not apply, and gain or loss must

be recognized as of the date of the disposition.

Although section 1031(f)(1) disallows nonrecognition treatment only for

direct exchanges between related persons, section 1031(f)(4) provides that

nonrecognition treatment does not apply to any exchange which is part of a

transaction or series of transactions "structured to avoid the purposes of" section

1031(f).  Therefore, section 1031(f)(4) may disallow nonrecognition treatment of

deferred exchanges that only indirectly involve related persons because of the

interposition of qualified intermediaries.  See Ocmulgee Fields, Inc. v.

---

[4]Related persons for the purposes of sec. 1031 are those with relationships
defined in sec. 267(b) or 707(b)(1).  The parties have stipulated that Malulani
Group, MBL, and MIL were related persons pursuant to sec. 267(b).

**[*9]** Commissioner, 613 F.3d at 1367; see also Teruya Bros., Ltd. & Subs. v. Commissioner, 580 F.3d 1038 (2009), aff'g 124 T.C. 45 (2005).

Section 1031(f)(2) provides exceptions to the disallowance-upon-disposition rule for related parties in section 1031(f)(1). As pertinent here, section 1031(f)(2)(C) provides that any disposition of the relinquished or replacement property within two years of the exchange is disregarded if the taxpayer establishes to the satisfaction of the Secretary, with respect to the disposition, "that neither the exchange nor such disposition had as one of its principal purposes the avoidance of Federal income tax." We have held that any inquiry under section 1031(f)(4) as to whether a transaction is structured to avoid the purposes of section 1031(f) should also take into consideration the "non-tax-avoidance exception" in section 1031(f)(2)(C). See Teruya Bros., Ltd. & Subs. v. Commissioner, 124 T.C. at 53; see also Ocmulgee Fields, Inc. v. Commissioner, 132 T.C. at 117-118.

II. Application

Respondent does not dispute that MBL's exchange of the Maryland property for the Hawaii property meets the requirements for a like-kind exchange under section 1031(a)(1). Furthermore, because MBL used FAEC, a qualified intermediary, to facilitate its sale of the Maryland property and acquisition of the

**[\*10]** Hawaii property, respondent does not contend that the exchange ran afoul of the specific requirements of section 1031(f)(1). However, respondent contends that MBL's exchange is disqualified from nonrecognition treatment pursuant to section 1031(f)(4) as a transaction structured to avoid the purposes of section 1031(f). Petitioner avers that the exchange was not structured to avoid the section 1031(f) related person rules.

The transaction at issue is similar to those involved in two prior cases in which this Court considered whether a deferred exchange between related persons violated section 1031(f)(4): Ocmulgee Fields, Inc. v. Commissioner, 132 T.C. 105, and Teruya Bros., Ltd. & Subs. v. Commissioner, 124 T.C. 45. In those cases the taxpayers received replacement property from related persons in deferred exchanges involving qualified intermediaries, followed by the related persons' sales of the relinquished property. Ocmulgee Fields, Inc. v. Commissioner, 132 T.C. at 107-108; Teruya Bros., Ltd. & Subs. v. Commissioner, 124 T.C. at 46-48. We concluded that the transactions were the economic equivalent of direct exchanges of property between the taxpayers and the related persons, followed by the related persons' sales of the relinquished property and retention of the cash proceeds. Thus, the investment in the relinquished property had been cashed out, contrary to the purpose of section 1031(f). Ocmulgee Fields, Inc. v.

[*11] Commissioner, 132 T.C. at 116-117; Teruya Bros., Ltd. & Subs. v. Commissioner, 124 T.C. at 54-55. The transaction at issue is no different: The investment in the Maryland property was cashed out with a related person's retaining the cash proceeds. The interposition of a qualified intermediary cannot obscure that result. See Ocmulgee Fields, Inc. v. Commissioner, 132 T.C. at 116-117; Teruya Bros., Ltd. & Subs. v. Commissioner, 124 T.C. at 55.

However, petitioner argues that the exchange of the Maryland and Hawaii properties was not structured to avoid the purposes of section 1031(f) because MBL had no "prearranged plan" to conduct a deferred exchange with MIL, citing the following example in the legislative history: "For example, if a taxpayer, pursuant to a prearranged plan, transfers property to an unrelated party who then exchanges the property with a party related to the taxpayer within 2 years of the previous transfer in a transaction otherwise qualifying under section 1031, the related party will not be entitled to nonrecognition treatment under section 1031." H.R. Rept. No. 101-247, supra at 1341, 1989 U.S.C.C.A.N. at 2811. Petitioner contends that MBL had no prearranged plan because it first diligently sought a replacement property held by an unrelated party and only turned to the Hawaii property when the deadline to complete a deferred exchange was imminent. Petitioner also emphasizes that MBL decided to acquire the replacement property

[*12] from a related person only after it had already engaged a qualified intermediary (because a deferred exchange was necessary), whereas in Ocmulgee Fields and Teruya Bros. the taxpayers had decided to acquire replacement properties from related persons before hiring qualified intermediaries.

We considered and rejected similar arguments in Ocmulgee Fields. The taxpayer in that case had, like MBL, first made attempts to find a suitable replacement property held by an unrelated person before turning to property held by a related person. Ocmulgee Fields, Inc. v. Commissioner, 132 T.C. at 107-108. We concluded, however, that the presence or absence of a prearranged plan to use property from a related person to complete a like-kind exchange is not dispositive of a violation of section 1031(f)(4). Id. at 121-122.[5]

Instead, the inquiry into whether a transaction has been structured to avoid the purposes of section 1031(f) has focused on the actual tax consequences of the transaction to the taxpayer and the related party, considered in the aggregate, as compared to the hypothetical tax consequences of a direct sale of the relinquished property by the taxpayer. Those actual consequences form the basis for an

---

[5]Because the absence of a prearranged plan is not dispositive regarding a violation of sec. 1031(f)(4), we do not believe it is material that MBL engaged a qualified intermediary before deciding to acquire replacement property from a related person.

[*13] inference concerning whether the transaction was structured in violation of section 1031(f)(4).  See Ocmulgee Fields, Inc. v. Commissioner, 613 F.3d at 1369 ("[W]e can look to the actual consequences of * * * [the taxpayer's section 1031] transactions to ascertain its intent."); see also Teruya Brothers., Ltd. & Subs. v. Commissioner, 580 F.3d at 1045-1046 (looking to actual consequences of transaction to discern the taxpayer's intent).  This Court in both Teruya Bros. and Ocmulgee Fields compared the hypothetical tax that would have been paid if the taxpayer had sold the relinquished property directly to a third party with the actual tax paid as a result of the taxpayer's transfer of the relinquished property to the related person in a like-kind exchange followed by the related person's sale of the relinquished property.  See Ocmulgee Fields, Inc. v. Commissioner, 132 T.C. at 118-120; Teruya Bros., Ltd. & Subs. v. Commissioner, 124 T.C. at 55.  For this purpose the actual tax paid comprised the tax liability of both the taxpayer and the related person in the aggregate.  See Ocmulgee Fields v. Commissioner, 132 T.C. at 118, 120; Teruya Bros., Ltd. & Subs. v. Commissioner, 124 T.C. at 55.  Where the aggregate tax liability of the taxpayer and the related person arising from their like-kind exchange and sale transaction is significantly less than the hypothetical tax that would have arisen from the taxpayer's direct sale of the relinquished property, we have inferred that the taxpayer structured the transaction with a tax-

[*14] avoidance purpose.  See Ocmulgee Fields, Inc. v. Commissioner, 132 T.C. at

118-120; Teruya Bros., Ltd. & Subs. v. Commissioner, 124 T.C. at 55.

Petitioner would have had to recognize a $1,888,040 gain had MBL directly

sold the Maryland property to an unrelated third party.  Although petitioner's

NOLs would have offset a portion of this gain, it would have paid an additional

$387,494 in tax for 2007 as a result of the direct sale.  Petitioner would have also

owed an additional $264,171 of tax for 2005 because of the loss of that NOL

carryback.  However, because the transaction was structured as a like-kind

exchange, only MIL was required to recognize gain--and that $3,127,004 of gain

was almost entirely offset by its NOLs.[6]  The substantial economic benefits to

---

[6]Petitioner also argues that the exchange lacked a tax-avoidance purpose
under sec. 1031(f)(2)(C), and therefore was not structured to avoid the purposes of
sec. 1031(f), because of the "net economic detriment" petitioner and MIL suffered
on account of the loss of the NOLs that MIL used to offset the 2007 gain
recognized from its disposition of the Hawaii property.  However, petitioner failed
to present any evidence that MIL had taxable income in subsequent years which
could have been offset with the NOLs used for 2007 and therefore that petitioner
and MIL sustained any net economic detriment because of their use for that tax
year.  Our analysis in both Teruya Bros. and Ocmulgee Fields focused on the tax
benefits in the year of the disposition of the relinquished property.  See Ocmulgee
Fields, Inc. v. Commissioner, 132 T.C. 105, 118-119 (2009), aff'd, 613 F.3d 1360
(11th Cir. 2010); Teruya Bros., Ltd. & Subs. v. Commissioner, 124 T.C. 45, 55
(2005), aff'd, 580 F.3d 1038 (9th Cir. 2009).  We note, however, that the Court of
Appeals for the Ninth Circuit in Teruya Bros. acknowledged the theoretical
possibility that the tax price of using NOLs to shelter gain in the year of the
relinquished property's disposition could equal or exceed the tax deferred in the

(continued...)

[*15] petitioner and MIL as a result of structuring the transaction as a deferred exchange are thus clear:  Malulani Group and MBL were able to cash out of the investment in the Maryland property almost tax free.[7]  We thus infer that MBL structured the transaction with a tax-avoidance purpose.[8]

Petitioner argues that the transaction nonetheless lacked a tax-avoidance purpose because it did not involve the exchange of low-basis property for high-basis property.  See H.R. Conf. Rept. No. 101-386, at 614 (1989), 1989

---

[6](...continued)
like-kind exchange.  See Teruya Bros., Ltd. & Subs. v. Commissioner, 580 F.3d at 1047 n.12.

[7]As noted supra p. 5, MIL's $3,127,004 gain recognized on the sale of the Maryland property was entirely offset by its NOLs for regular tax purposes but triggered an alternative minimum tax liability of $44,774 on account of sec. 56(d)(1).

[8]Petitioner's only witness--Malulani Group's former president, Mr. Ulveling--sought in his testimony to create the impression that it was unaware of the specifics of MIL's financial condition--and by implication the existence of MIL's NOLs--notwithstanding that Malulani Group owned almost 70% of MIL's stock.  He did so by pointing out that MIL's financial condition was known only to three persons associated with Malulani Group; namely, members of Malulani Group's MIL Note Committee.  Mr. Ulveling neglected to mention, however, that he was one of those three members (as is documented in the stipulated exhibits), and it is undisputed that he was the chief executive officer of MBL and played a central role in planning the exchange with MIL.  Thus, it is obvious that Mr. Ulveling was well aware of MIL's NOLs when planning the exchange on MBL's behalf.  Mr. Ulveling's attempt to obscure this point further persuades the Court that the transaction had a tax-avoidance purpose.

**[*16]** U.S.C.C.A.N. 3018, 3217 (wherein the conference committee explains that the non-tax-avoidance exception of 1031(f)(2)(C) "generally will apply to * * * transactions that do not involved [sic] the shifting of basis between properties"). It is true that MIL recognized more gain on the disposition of the Hawaii property than MBL realized on the disposition of the Maryland property. However, MIL was able to offset the gain recognized with NOLs, resulting in net tax savings to petitioner and MIL as an economic unit. Net tax savings achieved through use of the related party's NOLs may demonstrate the presence of a tax-avoidance purpose notwithstanding a lack of basis shifting. See Teruya Bros., Ltd. & Subs. v. Commissioner, 580 F.3d at 1047; see also Teurya Bros. Ltd. & Subs. v. Commissioner, 124 T.C. at 55.

In sum, by employing a deferred section 1031 exchange transaction to dispose of the Maryland property, petitioner and MIL, viewed in the aggregate,[9] "have, in effect, 'cashed out' of the investment", H.R. Rept. No. 101-247, supra at 1340, 1989 U.S.C.C.A.N. at 2810, virtually tax free--in stark contrast to the substantial tax liability petitioner would have incurred as a result of a direct sale. As was the case with the transaction at issue in Teruya Bros., the transaction at

_____

[9]See Teruya Bros., Ltd. & Subs. v. Commissioner, 580 F.3d at 1045 ("[E]xamining the taxpayer and related party's economic position in aggregate is often the only way to tell if § 1031(f) applies.").

**[*17]** issue here allowed petitioner and MIL "to cash out of a significant investment in real property under the guise of a non-taxable like-kind exchange". Teruya Bros., Ltd. & Subs. v. Commissioner, 580 F.3d at 1046; see also Ocmulgee Fields, Inc. v. Commissioner, 613 F.3d at 1365. Consequently, the transaction was "structured in contravention of Congress's desire that nonrecognition treatment only apply to transactions 'where a taxpayer can be viewed as merely continuing his investment.'" Ocmulgee Fields, Inc. v. Commissioner, 613 F.3d at 1365 (quoting H.R. Rept. No. 101-247, supra at 1340, 1989 U.S.C.C.A.N. at 2810). Petitioner has failed to demonstrate[10] that avoidance of Federal income tax was not one of the principal purposes of MBL's exchange with MIL and the disposition of the Maryland property. We therefore conclude that the transaction was structured to avoid the purposes of section 1031(f). Consequently, petitioner is not entitled to defer recognition of the gain realized on the exchange of the Maryland property under section 1031(a)(1).

---

[10]We reach this conclusion regardless of whether the standard petitioner must satisfy in so demonstrating is by a preponderance of the evidence or a heightened "strong proof" standard. See Teruya Bros., Ltd. & Subs. v. Commissioner, 124 T.C. at 54 n.12.

[*18]     To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.